RIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CODY PERRY, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| THE CITY OF LLANO, MATTHEW | § | A-18-CV-767-LY |
| GRANT HARDEN, MELISSA SLOAN, | § | |
| AND KEVIN RATLIFF, | § | |
| Defendants. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Kevin Ratliff's Rule 12(b) Motion to Dismiss Plaintiff's

Second Amended Complaint (Dkt. #35), Defendant City of Llano's Motion to Dismiss Plaintiff's

Second Amended Complaint Pursuant to Rule 12(b)(6) & Brief in Support (Dkt. #36), and all

related briefing.[1] Having considered the parties' briefing and applicable law, and finding that

oral arguments are not necessary, the court will recommend the motions be granted.

I.    BACKGROUND

Cody Perry ("Perry") brings this civil rights lawsuit against the City of Llano (the

"City"); its former Police Chief, Kevin Ratliff ("Chief Ratliff"); and two former Llano police

officers, Matthew Grant Harden ("Harden") and Melissa Sloan ("Sloan").  Dkt. #34 (Second

Amd. Compl. or "SAC"). Perry alleges Harden and Sloan used excessive force and arrested him

without probable cause on November 6, 2016.  He alleges the City is subject to *Monell* liability

because "[t]he use of excessive force and the arrest without probable cause of the citizens of

---

[1] The motions and related briefing were referred to the undersigned for a Report and Recommendation by
United States District Judge, Lee Yeakel, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and
Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

Llano, Texas (including Plaintiff) by members of the Llano Police Department was so widespread and pervasive as to have the force of law" and "the lack of policies and procedures to provide for the safe and lawful treatment of individuals detained by the police amounted to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." SAC at ¶¶ 50-51. Perry alleges that Chief Ratliff is individually liable "for failing to supervise Harden and Sloan with deliberate indifference." SAC at ¶ 55.

The City and Chief Ratliff separately moved to dismiss on the ground that Perry failed to adequately plead his claims against them. Chief Ratliff also contends he is entitled to qualified immunity. The City moved to dismiss three possible bases of liability it believed Perry may have alleged. Perry clarified that he only seeks to hold the City liable for "a practice of widespread constitutional violations on behalf of the Llano Policy Department [that were] so pervasive as to have the force of law." Dkt. #40 (Resp.) at ¶ 10. Perry's Second Amended Complaint also makes clear that "[t]he Llano City Council is responsible for establishing the Departmental policies, rules, regulations, ordinances, and procedures under which the Chief and each and every one of the employees must act." SAC at ¶ 49. Several of the issues presented in the motions overlap, and Perry filed a single response to both motions. Dkt. #40.

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the

claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).

III.   APPLICABLE LAW

A.   **Municipal Liability**

In *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 solely because its employee committed a constitutional tort.   *Id*. at 691.   Put differently, a plaintiff cannot prevail on a theory of *respondeat superior*.   *Id*.   Thus, when a non-policy-making local governmental employee acts in a manner inconsistent with established governmental policy, the governmental employer cannot be held liable under Section 1983.   *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988); *McConney v. City of Houston*, 863 F.2d 1180, 1184 & n.2 (5th Cir. 1989).

Municipalities and other local governments may incur Section 1983 liability, however, where official policy or custom causes a constitutional violation. *Bennet v. City of Slidell,* 728 F.2d 762, 766 (5th Cir. 1984). For municipal liability to attach, the plaintiff must show three elements: (1) a policymaker; (2) an official policy; and (3) a "violation of constitutional rights whose 'moving force' is the policy or custom."   *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).   Municipal policy for purposes of Section 1983 liability may consist of:

> 1.   A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2.   A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Deep East Tex. Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

In order to prevail on a municipal liability claim, a plaintiff must show "(1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences." *Johnson*, 379 F.3d at 309. Deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Id.* Simple negligence or even heightened negligence will not support liability. *Id.*; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

**B.      Supervisory Liability**

Supervisory officials cannot be held liable under section 1983 for the actions of subordinates on any theory of vicarious or *respondeat superior* liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  A plaintiff must show that the conduct of the supervisors denied the plaintiff his constitutional rights.  *Id*. When, as here, a plaintiff alleges a failure to train or supervise, the plaintiff must show that: "'(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Perniciaro v. Lea*, 901 F.3d 241, 259 (5th Cir. 2018) (quoting *Davis*, 406 F.3d at 381)).  Deliberate indifference is a stringent standard of fault, requiring more than negligence or even gross negligence. *Davis*, 406 F.3d at 381. Deliberate indifference requires that the municipal actor disregarded a known or obvious consequence of his action.  *Id*. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.  *Id*.

## IV.   ANALYSIS

The City argues Perry failed to plead a claim against it under *Monell* because he failed to plead similar incidents that occurred before his arrest that could constitute a City policy or practice. Similarly, Chief Ratliff argues Perry failed to plead similar incidents that occurred before Perry's arrest that could demonstrate Chief Ratliff failed to adequately supervise his subordinates.

In determining whether prior acts are similar, previous "bad" or "unwise" acts are not sufficient. *Davis*, 406 F.3d at 383.  Perry must demonstrate a "pattern of similar incidents" as the specific violation in question. *Id.* "While the specificity required should not be exaggerated, . . . the prior acts [must] be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party." *Id.*  A showing of deliberate indifference requires a plaintiff to "show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights." *Id.*

In his Second Amended Complaint, Perry describes several other incidents that allegedly demonstrate "Defendants Ratliff, Harden, Sloan, and other officers on the Llano Police Department have engaged in a long-standing and pervasive pattern of violating peoples' civil rights." SAC at ¶ 21.  Perry contends that Defendants Chief Ratliff and Harden, as well as other Llano police officers, have been indicted for their illegal behavior. SAC at ¶ 24. Some of these incidents were described in a letter Sloan wrote to the Llano City Council "at approximately the same time period of Mr. Perry's arrest."[2]  SAC at ¶ 29.

In making his arguments, Chief Ratliff relies on Sloan's letter itself, which he attached to an earlier motion to dismiss.  *See* Dkt. #35 (Ratliff Mtn.) at ¶ 9 (citing Dkt. #15-2); Dkt. #42

---

[2] However, Perry pleads the letter describes incidents that occurred as late as April 2017, and therefore it is clear from his pleading that the letter was sent sometime after his arrest.  SAC at ¶ 33.  The letter itself is dated November 10, 2017.  Dkt. #15-2.

(Ratliff Reply) at ¶ 10.   In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, __ F.3d __, 2019 WL 1529692, at *5 (5th Cir. Apr. 9, 2019) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005)). When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents. *Id.* (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "'In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.'" *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)).   Sloan's letter is central to Perry's claims, *see* SAC at ¶¶ 29-37, and therefore the court may consider it within the scope of the Rule 12(b)(6) motion.   *See id.* Accordingly, the court will compare the constitutional violations Perry suffered to those in his Second Amended Complaint and in Sloan's letter that occurred before his arrest.

Perry was arrested on November 6, 2016.   SAC at ¶ 9.   After Perry left a fast food restaurant, Harden followed Perry home in Harden's personal vehicle. SAC at ¶ 10.   A brief verbal exchanged occurred, and Harden punched Perry in the face without warning.   SAC at ¶ 13. Harden punched Perry repeatedly causing him to fall limp to the ground.   SAC at ¶¶ 15-16. Harden placed Perry in handcuffs, and while Perry was still handcuffed and face down on the ground, Sloan "tased" Perry.   SAC at ¶¶ 17-18.   Perry was charged with Assault of a Peace

Officer, but the District Attorney's Office dismissed the charge. SAC at ¶¶ 19-20. Perry alleges excessive force was used against him and he was arrested without probable cause.

Perry alleges that Harden has been charged with "official oppression" for his unlawful arrest of Brook Carta on April 25, 2016, "in which he subjected the young woman to mistreatment[,] assaulted her in a physically aggressive and angry manner[,] and then illegally searched her vehicle." SAC at ¶ 26. Perry states that Harden and another officer are "alleged to have harassed a young black teenager with learning disabilities sometime in 2015." SAC at ¶ 30. The teenager's mother allegedly recorded the incident and sent a copy to Chief Ratliff. SAC at ¶ 30. In April 2016, Harden and other officers are alleged to have assaulted a man in a gas station. SAC at ¶ 30. Chief Ratliff allegedly curtailed an investigation into the matter. SAC at ¶ 30.

Sloan's letter to members of the Llano City Council includes a timeline of various events in the Llano Police Department that illustrate "violations of law, policy and citizen's civil rights." Dkt. #15-2 at 2. She describes a December 2015 incident in which Harden and another officer conduct a traffic stop. Dkt. #15-3 at 2-3. Harden handcuffed the driver and placed him in the patrol car, but the other officer did not know why the driver was handcuffed or placed in the patrol car. Later, a search of the car revealed a small amount what appeared to be illegal drugs, which Harden mishandled and destroyed. The driver was eventually released and was not issued a ticket. Sloan relayed this incident to Chief Ratliff, but Harden was not investigated or disciplined for the incident. *Id.* at 4. Sloan also described an April 2016 incident in which an off-duty Llano police officer verbally assaulted another driver after a traffic-related misunderstanding at a gas station.[3] *Id.* at 4-6. The officer "jab[ed] him in the chest with his finger and knuckles," threatened to arrest him if he contradicted the officer, and "threatened to 'whip his ass.'" *Id*. at 5-6. Harden was present with the officer at the incident. *Id.* at 6. Sloan

---

[3] *See also* SAC at ¶ 30.

relayed the incident to Chief Ratliff, who responded, "Well I'm sure it's nothing, you know how people are.  They are always trying to get us in trouble." *Id*. at 6.  Chief Ratliff spoke with the officer involved, but he did not speak to the other driver or other witnesses. *Id.* at 7-8.

Sloan's timeline also includes incidents that occurred before Perry's arrest, but are not similar to Perry's arrest. These include the failure of police officers to investigate crimes, bullying within the department, discord between the police department and the sheriff's office, allegations that Harden was keeping drugs he found during police stops to give to informants in exchange for information, and a domestic dispute involving Harden in which witnesses feared Harden was suicidal.  Chief Ratliff was informed of these incidents but did not effectively address them.

Neither Perry's Second Amended Complaint nor Sloan's letter include incidents before Perry's arrest where excessive force was used involving injury to a third party.  *See Davis*, 406 F.3d at 383.  At most, Perry alleges Harden's arrest of Brook Carta was "physically aggressive and [in an] angry manner," but he does not allege Carta was injured. *See* SAC at ¶ 26.  The April 2016 gas station incident did not involve an arrest, occurred while the officer was off-duty, the force used amounted to "jabbing [an individual] in the chest with [] fingers and knuckles," and is not alleged to have caused an injury.  Dkt. #15-3 at 5-6.

Sloan's letter describes no arrests without probable cause that predate Perry's arrest. Perry's Second Amended Complaint generically describes that for several years before Perry's arrest, Llano police officers would escalate minor situations and then "unlawfully arrest the individual and charge them with a false offense or offenses, such as public intoxications, resisting arrest, or assault on a peace officer."  SAC at ¶ 22.  Perry alleges this behavior was "known and overseen" by Chief Ratliff, who "responded to these unlawful police actions with

deliberate indifference."  SAC at ¶ 23.  "At his best, Ratliff shrugged off a known pattern of civil rights violations and at his worst, he proactively and purposefully covered up his own and his officers' ongoing misdeeds."  SAC at ¶ 23. These generic allegations fail to meet the pleading standards of *Twombly* and *Iqbal* and fail to state a plausible claim for relief.  In these paragraphs, Perry alleges no specific facts and his allegations are no more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555-57.  He fails to "plead enough facts to nudge the claims across the line from conceivable to plausible."  *See Hinojosa*, 807 F.3d at 684.

The only specifically alleged unlawful arrest before November 2016 is Harden's April 2016 arrest of Carta.  SAC at ¶ 26.  Perry alleges the arrest was "unlawful," but alleges no facts that support that conclusion.  SAC at ¶ 26.  Without more, this allegation also does not satisfy Rule 8.  Moreover, Perry does not allege that Chief Ratliff or the City[4] was aware of the unlawful nature of this arrest.  Accordingly, this single arrest is insufficient to state a claim that any failure to train officers by Chief Ratliff or any City policy "reflect[ed] a 'deliberate' or 'conscious' choice to endanger constitutional rights." *See Davis*, 406 F.3d at 383.

Perry argues that he "has outlined a series of constitutional violations that went unchecked by the Ratliff [sic] prior to the assault and wrongful arrest of Plaintiff by Ratliff's subordinates Harden and Sloan."  Dkt. #40 (Resp.) at ¶ 23.  But this ignores the requirement that "the prior acts [must] be fairly similar to what ultimately transpired."  *See Davis*, 406 F.3d at 383.  Perry also argues that the inquiry into whether the prior acts are sufficiently similar is

---

[4] Perry pleads no facts that the Llano City Council was aware of any of the incidents before receiving Sloan's letter.  In his response, Perry argues that his Amended Complaint put the City on notice of the constitutional violations.  However, the City could not have been deliberately indifferent to a policy it did not know existed at the relevant time.

appropriate at summary judgment, not at the motion to dismiss stage.  But this argument ignores Perry's Rule 8 obligation to plead facts that state a plausible claim for relief.  In this case, Perry has failed to plead sufficient facts that go beyond conclusory allegations that would demonstrate Chief Ratliff was deliberately indifferent to Perry's constitutional rights.

## V.   RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS** Defendant Kevin Ratliff's Rule 12(b) Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. #35) be **GRANTED** and the claim against him be **DISMISSED WITH PREJUDICE**.

For the reasons stated above, the court also **RECOMMENDS** Defendant City of Llano's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) & Brief in Support (Dkt. #36) be **GRANTED** and the claim against the City be **DISMISSED WITH PREJUDICE**.

## VI.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

 A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted

by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985);

*Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).


SIGNED April 29, 2019.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE